Good morning. My name is Brian Pandia, pro bono counsel for Mr. Lomeli. Section 1226 gives government authority to detain an alien pending deportation, but that authority is not unlimited. The government may only detain an alien pending deportation if it's first shown that the individual is an alien, second if it's shown by clear and convincing evidence  and third for only as long as it's necessary to effectuate the deportation. In addition, this court and Supreme Court has built in a number of Fifth Amendment procedural safeguards to ensure that the detention is as limited as possible. In this case, the government has not complied with those procedural requirements, nor has it shown that its detention of Mr. Lomeli, which is at seven going on eight years, complies with the legal requirements. Sarhabia's petition raises three bases for Mr. Lomeli's release from detention. First, the government has not complied with the procedural requirements this court set forth in Casas-Castellon versus the Department of Homeland Security or in Vijendra Singh versus Holder. In Casas, this court said that every alien detainee must be given an adequate opportunity to contest the necessity of his detention and understand why his or her detention is, quote, individually necessary. So there are two aspects of the Casas bond hearing. First, the opportunity to be heard, and second, that the hearing be specific enough so that the alien in detention knows why he or she is being detained. Can you address a threshold question for the procedural argument? Now, the government makes the argument first that you didn't exhaust it, either they have a jurisdictional argument, there's also a prudential exhaustion argument, and also they say the specific argument wasn't raised to the district court, so it's waived, and so this court should not consider those procedural arguments. Can you address that? Yes. Well, our response is that, first of all, being that this is a, our client was proceeding pro se in the proceedings below, that the exhaustion requirements are liberally construed, but I would point out we raised in our reply brief a number of instances where the lack of specificity of the bond hearing, the improper procedures that were used in the 2008 bond hearings, prejudiced the proceedings, and those were raised in his, in the traverse to the response to the order to show cause, point to pages 61, 63, and 64 of the excerpts of the record. There was no, they raised, our client raised the issue of whether the factors were properly considered, and also raised the issue of whether the evidence was considered with the specificity to balance against his more recent evidence of rehabilitation against the more temporally distant offenses. So we do contend it was raised. Also point to page 95, which was the original habeas petition, where our client argued, admittedly generally, but this was before his initial bond hearing, that the government has never had to justify the prolonged detention in a hearing before an immigration judge. So our argument is, to be sure, Mr. O'Malley did receive the hearing in 2008, but our argument is that that hearing did not comply with the requirements of CASAS. Okay, so what was missing? He had an opportunity to be heard, so what didn't he get? Well, there were two things he didn't get. First of all, there was no record of the hearing was created. The second thing he did not get is there were no specific findings were made by... No record, you mean no transcript of the proceeding, but there was an order by the IJ making findings as to both bases for retaining detention, that is, the two convictions for lewd conduct with children and the several controlled substances violations. Those were clearly in the record, correct? Those were memorialized by the IJ in the... Right, part of the record. It's part of the record. So the record that was not created, there was no transcript, no oral recording, no... In Vajendra Singh, the court, this court addressed a number of ways... I just want you to see, from my point of view, the findings of the IJ memorialization is part of the record. It is part of the record on appeal, what the IJ found. What the IJ did not do was he did not address with the specificity that's required under Vajendra Singh, under CASAS. You've made two arguments. One is that there's no transcript. Or comparable oral recording. Was a transcript required at the time that he issued it? It was not required, but it was subsequently required. So it's supposed to apply that retroactively and make him go back and do it again because he didn't get a transcript? Well, it's not so much... The reason why this matters is that in this case, and the court addressed this in Vajendra Singh, that if you're only relying on the findings that the immigration judge made, there's going to be an element of hindsight bias. The judge is going to, once he makes his mind up, he's going to point out what supports the decision. The court raised that concern, and so we have an instance here. I think this actually nicely illustrates the concerns that this court raised in the Singh case. We have these temporally distant offenses. We don't dispute that he was convicted in the 1990s of some very serious offenses. When was he released? He was released in 2004. That's not all that old, is it? Well, this conviction was in 1998, but he had no infractions during his time in the California state system. He's had a clean record since he's been in detention. He's gone through drug and sex offender rehabilitation. He's completed numerous educational, vocational, religious programs. Can I go back to the no transcript or oral recording? I actually did not see that argument in your brief to us because I was looking for that. It was made below. Did you make that argument in the brief that I just overlooked? Well, we made the argument. I mean, our argument is not the reason. We did not make the argument specifically that that's a specific basis. The argument we made is the reason why it matters to have a transcript or recording and specific findings is that allows the detainee, when he appeals it to the Board of Immigration Appeals, to understand why the government met its burden by clear and convincing evidence of why it needs to keep Mr. O'Malley in detention. You mean the findings in the memorandum we've discussed earlier are not specific enough? That is correct. And why are we not specific enough? I mean, the finding is he has two heavy felony convictions for lewd conduct with children under age. That's specific, right? Well, it is specific. What you're saying is that it's not specific unless the judge goes on from saying, and from that I conclude that he has a character that shows that he will be a recidivist? Correct. That is what we were arguing, that the immigration judge should have taken that extra step and explained why he believes there is a threat of present danger to society. It's not enough to recite his felony convictions for lewd conduct with children and his several drug convictions. The judge has to go beyond that and say, and upon this I base my findings that this man will be a danger to society if let loose. Yes, we believe that is the case. The ruling itself, he leaves out the intermediate step. He says the basis, and he says the result, but he doesn't have the intermediate step, and that intermediate step is missing, and your authority for the intermediate step being necessary is CASAS? It's CASAS, and it's also Singh v. Holder. But in looking at how the IJ weighs the equities, which I understood your argument to be, aren't we bound by GERA, as we said in Singh, I think, that we look to how the BIA says this is how the IJ is supposed to analyze this issue of dangerousness or flight risk. We can't rethink that issue, right? There's no requirement there to weigh equities. It just says to look at specific factors. That is correct. We don't dispute that as the way the IJ should look at it. The problem here was that Mr. Lomelli never knew what weight the judge gave to his evidence of rehabilitation, which I contend is significant here, by not taking the intermediate step. That's not required, is it, by the BIA and the GERA factors that we cite in Singh? I didn't see that as being a requirement that the BIA had imposed. Well, I would argue that it is a requirement under Singh, and it was raised in the question, and Singh was the case that created the requirement after the bond hearing of why the hearing needs to be transcribed or otherwise recorded. Transcription, you didn't make that as a separate argument in your brief, so all you're really arguing here is the lack of specificity in the findings. Did you argue to the BIA that he was rehabilitated and that the IJ had failed to take that into account? I was not involved, but Mr. Lomelli did raise that argument. Okay, so it was before the BIA. So the BIA had this evidence before him. It still decided that the IJ was correct in his decision. So if he's argued the rehabilitation, what's the problem? Well, the problem is he could not address why the IJ did not find the evidence of rehabilitation to be significant. He does have a criminal record, but that's going to be the case in everybody that's receiving a CASAS bond hearing. The problem is that without knowing what weight is given to the evidence of rehabilitation, which is more recent than the previous record of convictions, the detainee just does not know why his detention is individually necessary, which has been one of the key points in all of the cases from CASAS to Singh, the Supreme Court's Zadavidis decision, explaining why the detention is individually necessary. I mean, in Zadavidis, the Supreme Court recognized that the detention, of course you want to keep a dangerous person off the streets, but that is not a primary basis for ICE holding someone. The basis is to make sure the person is there come the day of deportation. And so by not making the specific findings of why this more recent evidence of rehabilitation does not outweigh or does not at least make the government not meet its burden of clear and convincing evidence to show that the detention is warranted, our client was prejudiced by not knowing what he had to do to prove that his detention should not have continued. Would it have been admissible for the EIJ to say, I don't care how much rehabilitation this man has proven through sexual rehabilitation and drug rehabilitation, the fact that he's been convicted for these crimes makes him, to me, a danger to society. Then you would have been satisfied. Well, I would not have been satisfied. That would have raised a different set of circumstances. I would not have been satisfied in that instance because the judge needs to make an Are you saying that rehabilitation requires that EIJ to put the man down in liberty? Well, it requires the EIJ to make an individual determination and show that Individual determination besides saying, I am not going to give any weight to this rehabilitation. He has to articulate a reason why he's not giving any weight to the evidence. Does the crime over weighs the mitigation effect of the rehabilitation in my mind? Well, I don't think the judge can decide. Are you tired by 1226E from questioning that? I mean, 1226E says those sorts of discretionary determinations are for the Attorney General. We can't rethink it or second-guess it. Well, our argument is, though, that by not following the correct procedure, it was the bond hearing did not comply with the procedures of CASAS, of SING. But if the EIJ had made the determination that Judge Bea just mentioned, nothing he could do would change my opinion. We would just have to defer, right? Well, I think that would have raised a different set of circumstances. If the immigration judge said, in my mind, because of these convictions, he is a danger to society, nothing is going to change my mind, that would have been a very different set of circumstances. I mean, the EIJ did not We would have to defer to that, right, unless for some reason it was inconsistent with GARA. He didn't follow GARA, but I don't see why that would be inconsistent with the GARA factors. Well, I don't think if the EIJ said that my mind is made up, there's no rehabilitation that can rehabilitate this person, that would be appropriate either. You think in no case that someone who had had a long history of recidivism and then says, well, I've rehabilitated while I'm in prison, you think in no case that the EIJ could say, no, that's not good enough? Every time you get out, you murder somebody new? I mean, that's obviously this case. Well, that is not this case, and I think we're getting into the land of hypotheticals as well. That's our land here. Well, that's not this case, and that's not what this case is. I see my time is running short, but two other points I would like to make is that, secondly, Mr. Lomelli has been in custody now for over seven years. The Ninth Circuit has found shorter detentions to violate his due process rights. In Tahani v. Wells, two and a half years. In Nadaraja v. Gonzales, five years was deemed unreasonable. And in that case, in fact, the Ninth Circuit noted the Supreme Court's presumption that six months is a reasonable length of detention. Okay, before you sit down, I mean, how are we to determine that? Are we supposed to just wait for a certain amount of time and then we have to let him out? I mean, there have been proceedings that have been ongoing during all this time. The irony of the detention cases is that in non-detention cases, it is in the alien's interest to prolong proceedings before this court and before the BIA as long as possible. There's no downside to that. And so your client is being allowed to remain in the United States under bad circumstances, or under less than favorable circumstances, but he is here. Well, he is here in that they are in favorable circumstances. It's his challenges, though, to the judicial proceedings that are causing him to remain in detention because there's no evidence in the record that he wouldn't be able to be repatriated. And we said in Prieto, that's good enough. That doesn't make the detention unreasonable. He's not in limbo of any sort. Well, it is true he could be sent back to Mexico. I mean, the reality of the situation, though, is that he has this, which was our third argument, is he has the pending citizenship case, which will resolve itself,  and he's been sitting in detention since 2006. Since 2010, it's been in a county sheriff's prison in Arizona. He's separated from his family, some of whom's here in attendance today. The problem is under Prieto-Romero, the standard that the court created is whether it's reasonably foreseeable that he's going to be deposed. Now, I think the government takes a position that he could drop his challenges today, and he could deport himself to Mexico. But in light of the pending citizenship case, that's going to go on for longer as well. It's not likely that he's going to be deported today or tomorrow. This is something that's been dragging on for a long time, and I don't think there is no bright-line rule here. But I would argue, though, that seven going on eight years is patently unreasonable to hold someone in ICE detention for that long. And there's also a number of cases this court has not recognized it, but there are other circuits as well as district courts have recognized it. There is time built into the presumption of reasonableness for pursuing legal challenges. So even though he is pursuing challenges which has extended the proceedings, he should not be punished for that. We've taken you well over your time, but I am going to allow you some time for rebuttal. Thank you, Your Honor. Let's hear from the government. May it please the Court. Yamila Babila for the government. As this Court has repeatedly stated, the Attorney General has authority to detain Petitioner pending judicial review of the final order of removal. That authority is in 1226A. Petitioner had a CASAS hearing. He declined. The government's offered to have a new hearing following this Court's decision in Singh. Accordingly, the only relief that this Court can issue, Petitioner doesn't want it, and so the appeal should be dismissed. This case is directly on point with Prieto as well as CASAS-Castrillon, where this Court found that prolonged does not equal indefinite. That is, that although we do not know the date certain that his petition for review will be resolved, it will be resolved. This Court is bound by strict procedural rules that guarantee the expeditious resolution of his appeal. Accordingly, the government stands ready and able and willing to repatriate him to Mexico, as the government routinely does in other cases, as soon as the stay of removal is lifted and the petition for review is resolved. We do not take the position that we can detain him, as Petitioner's counsel just indicated, simply because he is appealing the final order of removal. We cannot remove him at this point simply because there is a stay of removal in place, a stay of removal. Ms. Davila, what about counsel's position that the CASAS hearing record is deficient in failing to articulate specific findings that show that there was consideration of the rehabilitation testimony and how the record convictions outweigh that testimony for purposes of public safety? Your Honor, Petitioner's CASAS hearing predates the Court's decision in Singh. And so at the time, there was no requirement that the hearing be tape-recorded or transcripts to be made. What we do know is that the immigration judge had before him Petitioner's extensive criminal record, which included two counts of lewd conduct with a child under the age of 14, his nieces, over the course of two years, that he was sentenced to 10 years confinement, that he also had at least four other substance, controlled substance violations. Were these possession, controlled substance, or were they possession for purposes of dealing, or were they sales? Under the influence. They were controlled substance. He was found under the influence of a controlled substance on four different occasions. It was under himself. He wasn't selling it. He wasn't having a great amount for the purpose of selling. There's nothing in the record to that effect, Your Honor. However, all of these crimes are, they are, they speak to his dangerousness to the community, his being in the community as both a pedophile and as a substance abuser. Additionally, he was confined. Who was he abusing with his drugs other than himself? Your Honor, you're right that he was ingesting the drugs himself, but he's in the community under the influence, placing others in danger while he's under the influence of these narcotics, these illegal narcotics. Petitioner was in confinement for a total of eight years. He, it's not relevant that he didn't abuse any more children while he was in the California penal system. So the petitioner makes much of that, that his crimes are not recent. However, he hasn't been out in the general community. Therefore, that doesn't speak too much. The IJ had the authority to weigh all of these factors, consider them pursuant to Enrique Guerra. But I think the point was that there's no record evidence that the IJ did consider the rehabilitation factors at all. Your Honor, we know that petitioner submitted all this documentation regarding his rehabilitation, Exhibits A through R. There's nothing in the record that indicates that the IJ ignored them. But the IJ is within his authority to determine that it doesn't outweigh the extensive and serious and close in time criminal record. And this court is without jurisdiction to re-weigh that evidence as petitioner would have you do. Pursuant to 1226E. Petitioner has declined a new hearing under saying the Department of Homeland Security has offered that to him. Accordingly, if he wants another opportunity to create a record and then challenge the weight of the evidence, then he should take the government up on its offer for a new hearing. And he's declined that. Accordingly, the court should deny the habeas petition. Thank you, Your Honor. Thank you. Mr. Pandya, I'll offer you a minute. Is counsel correct that you denied a Singh hearing with a transcript? It is correct. And part of the reason was because it would have had the same problem before. What he wants is a release. But short of that, what he wants is a hearing with more specificity so he can understand how and why. Right. But after Singh, he was likely to get a lot more specificity, wasn't he? I thought that was your argument, that Singh offered him more procedure that he didn't get the first time. So when he's offered a hearing the second time, what's the problem? Well, certainly, I think I probably would have advised him to take the hearing had I been involved. And we understand that you were in counsel at the time, and he would have been well counseled then. But given that he declined the hearing, why is this now the government's problem? And why does it have to come to us if he's been offered a hearing where he could have cured a lot of the problems that you brought to us today and he declined it? Well, because there still is the problem of the specificity and the specificity of the findings. And I think that the government – Well, how do you know that there wouldn't have been – we're blaming the I.J. for not being more specific on a record on a hearing that he didn't conduct? Because your client didn't want the hearing? That's kind of hard to fault an I.J. for not being more specific about a hearing he can't conduct, right? Well, I think he felt it would have turned out the same way, and I think he feels – Oh, that's a problem – that goes straight to the merits. I mean, if he thinks it's going to turn out the same way, that's his problem, right? He's going to have to live with that. Why is that our problem? Well, it's the court's problem because without him knowing the specificity of what's going to happen, he feels the offense is – He was perfectly free in light of Singh to argue to the I.J. that the I.J. had to be more specific. He would have been perfectly free to have argued to the BIA in appeal from the I.J. that the I.J. had not been sufficiently specific. And your position would be a whole lot stronger today if you had made those arguments. It would have been, and he – I think his – the argument, though, is without the specific findings, we have offenses which naturally raise moral outrage. So you're saying without a structural ruling, as it were, from the Ninth Circuit saying just as a matter of due process, you need to specify for the record what the – what your findings are, the I.A., I.J., then your client could have asked for that sort of findings and the I.J. could have said, no, I don't have to do it. Is that your argument? The I.J. could have said, I don't have to do that, which would have given another basis for appeal, or he would have known what – why – he would have had a better understanding of why his bond was denied. So that is the underlying problem here. And we have – when the government got up and mentioned that the convictions or the crimes he was convicted of are very – they were serious and they raise outrage anytime something involving children like that is going to raise outrage. But he was out – he was out for two years. He has his family here. They were convicted on lesser-included offenses. So there's more than meets the eye in this case. And it's – that's why specificity is necessary to sort out what weight is being given to the evidence, how the government has shown by clear and convincing evidence that Mr. Lomeli is a threat to society, and what Mr. Lomeli himself needs to show in response why he should be given bond. And we contend he was not given that opportunity, and therefore the detention has violated this Court's decisions in Singh and Casas and other cases. How old is Mr. Lomeli? He is – I believe he's in his 50s. I don't think there are any questions. Thank you very much, Mr. Pandya. Thank you, Your Honor. We thank both counsel for the argument. And, again, the Court recognizes Mr. Pandya and your associates, your pro bono service to the Court. We thank you for that. With that, we've completed the oral argument calendar for the day. The Court is adjourned. All rise. This Court is adjourned. The Court is adjourned.
judges: Bybee, Bea, Ikuta